1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    KAREN C. MARIE PETE,

11              Petitioner,                    No. CIV S-02-2713 MCE JFM P

12        vs.

13    GLORIA HENRY,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges her 1998 conviction on

18    charges of assault on a child under the age of eight causing the child's death, second degree

19    murder, and injury to a different child.  Petitioner was sentenced to 25 years to life.  Petitioner

20    raises two claims of jury instruction error.

21                                  FACTS[1]

22              As she described the evening of May 19, 1999, [petitioner] tried
              to put her two-year-old foster child, Tianna Harris, to bed.  Tianna
23            said, "No."  Since Tianna could not talk, [petitioner] thought
              Tianna had become possessed by a demon.  This possession was

24    _____

25        [1]  The facts are taken from the opinion of the California Court of Appeal for the Third
      Appellate District in People v. Pete, No. C036051 (October 23, 2001), a copy of which was
26    lodged on January 26, 2004.

also manifested by Tianna's unusual defiance and distorted appearance.  She was really ugly.

As a devout Christian, [petitioner] was frightened of this demon child and tried to protect herself from it.  She began to fight the demon with spiritual warfare.  She gave Tianna a time-out and read the Bible to her.  She remembered praying and rebuking the demon, but could not remember if she hit the demon repeatedly.

Tianna then fell down a step and hit her head.  Tianna started breathing funny and went limp.  She no longer appeared demonic.  [Petitioner's] husband got up and gave Tianna her asthma medication.  Fifteen minutes later, at 5 a.m. on May 20, 1999, [petitioner] called the paramedics because Tianna was having trouble breathing.  About two minutes later, [petitioner] cancelled the call, saying the baby was breathing alright.

The rest of the day's details were relayed by medical personnel and detectives.  At approximately 9 a.m. on May 20, 1999, [petitioner] took two-year-old Tianna to Dr. Lin.  Realizing Tianna had suffered severe head trauma, Dr. Lin immediately summoned emergency personnel.  Tianna had bruises all over her body, including hook-shaped bruises on her torso, and a large swollen bruise on her head.

Because the emergency was acute, Dr. Lin transferred Tianna to San Joaquin County General Hospital.  Tianna was comatose when she arrived at the hospital.  In addition to the bruises all over her body, there was a large pooling of blood internally in the back.  Her numerous head injuries were caused by separate blows and had been sustained within the previous 12 hours.

Semi-circular marks on Tianna's skin could only have been caused by her being struck by an electrical cord or small piece of rope.  A CAT scan showed internal bleeding in the brain.  Tianna's left lung was also collapsed.  At 8:30 p.m. that day, Tianna's brain ceased functioning.  At 1:39 p.m. the following day, she was pronounced dead.

An autopsy revealed Tianna died as a result of brain swelling from several blows to her head.  The degree of force required to inflict the type of injuries sustained by Tianna was the equivalent of her falling from a height greater than 10 feet.  The autopsy also revealed a number of injuries on Tianna's body which could be matched to a spoon, coaxial cable, and broken coat hanger taken from [petitioner's] home.

While efforts were still being made to save Tianna, one of the treating doctors asked [petitioner] how Tianna was injured.  [Petitioner] claimed Tianna had been caught under the porch.

1
2
3

> Two days after Tianna died, [petitioner] was arrested.  During her initial interview with police, she admitted she had killed Tianna.  She told the deputy, "I beat her."  ["]She's brain dead."  "I wouldn't stop."  "She wouldn't listen."  "I beat her again and again."

4   (People v. Pete, slip op. at 2-4.)

5                                   ANALYSIS

6   I.  Standards for a Writ of Habeas Corpus

7             Federal habeas corpus relief is not available for any claim decided on the merits in
8   state court proceedings unless the state court's adjudication of the claim:

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10
11

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

12

13   28 U.S.C. § 2254(d).

14             Under section 2254(d)(1), a state court decision is "contrary to" clearly

15   established United States Supreme Court precedents if it applies a rule that contradicts the

16   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

17   indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

18   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

19   (2000)).

20             Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21   habeas court may grant the writ if the state court identifies the correct governing legal principle

22   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24   simply because that court concludes in its independent judgment that the relevant state-court

25   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

26   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

1  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

2  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3          The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

5  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

6  habeas court independently reviews the record to determine whether habeas corpus relief is

7  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

8  II.  Petitioner's Claims[2]

9      A.  CALJIC 8.40

10         Petitioner's first claim is that the trial court erred by giving former CALJIC No.

11  8.40,[3] incorrectly instructing the jury on the element of intent to kill as to voluntary

12  manslaughter, depriving her of her right to a fair trial.  This claim was raised by petitioner on

13  direct appeal.  (See Exs. E and F to Answer to Petition for Writ of Habeas Corpus, filed August

14  11, 2003.)  The last reasoned state court rejection of the claim is the decision of the California

15  Court of Appeal for the Third Appellate District.  (See Ex. D to Answer.)

16         The state Court of Appeal rejected this claim of error under state law, finding it

17  harmless, citing People v. Watson, 46 Cal.2d 818, 835 (1956)(there was no reasonable

18  probability of a different result even without the error).  (Ex. D to Answer, at 5.)

19  ────────────────

20     [2] Petitioner's motion to amend the petition to add 32 new claims was denied by the
district court on January 31, 2008.  This action is proceeding on the original petition filed
21  January 2, 2003.

22     [3] The jury was instructed with the model jury instruction that was in effect at that time, as
follows:  "Every person who unlawfully kills another human being without malice aforethought
23  but with an intent to kill, is guilty of voluntary manslaughter in violation of Penal Code Section
1929a). [¶]  There is no malice aforethought if the killing occurred in the actual but unreasonable
24  belief in the necessity to defend oneself against imminent peril to life or great bodily injury.  [¶]
In order to prove this crime, each of the following elements must be proved:
25    1.  A human being was killed;
    2.  The killing was unlawful; and
26    3.  The killing was done with the intent to kill.
A killing is unlawful if it was neither justifiable nor excusable."  (Clerk's Transcript at 552.)

The appropriate standard of review for this particular error is, is it reasonably probable a defendant would have obtained a more favorable outcome in the absence of the error.  (*People v. Watson* (1956) 46 Cal. 2d 818; *Lasko, supra*, 23 Cal.4th at p. 111.)  [The court] conclude[s] it is not.

The jurors in this case were specifically instructed, "Do not single out any particular sentence or any individual point or instruction and ignore the others.  Consider the instructions as a whole and each in light of all the others."  (CALJIC No. 1.01.)

In addition, as in *Lasko*, the jurors were given other correct instructions "explaining the different between murder and manslaughter."  (*Lasko, supra,* 23 Cal.4th at p. 112.)  The jury was instructed that a person who kills in an unreasonable belief in the need to defend herself does not have the malice necessary for murder.  They were instructed that murder requires malice, as opposed to manslaughter where if [petitioner] acts in imperfect self-defense, the crime is manslaughter.  "In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent."  The jury was instructed the burden was on the People to establish, beyond a reasonable doubt, each element of murder and that "the act which caused the death was not done in the actual, even though unreasonable, belief in the necessity to defend [against] imminent peril to life or great bodily injury."  Finally, the jury was instructed, "If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the [petitioner] the benefit of that doubt and find it to be manslaughter rather than murder."

The instructions in this case were virtually identical to those in *Lasko*.  "[T]he jury was told that regardless of whether the killing of [Tianna] was intentional or unintentional, [petitioner] could not be convicted of murder unless the prosecution proved that, at the time of the killing, [petitioner] was *not* acting [under the unreasonable belief in the need for self-defense]."  (*Lasko, supra*, 23 Cal.4th at p. 112, emphasis in original; *People v. Blakeley, supra,* 20 Cal.4th at pp. 88-89.)

[Petitioner] contends the instructional error was prejudicial because it "precluded the jury from finding [petitioner] guilty [of voluntary manslaughter] if it concluded she had no intent to kill, erroneously directing a guilty verdict on a greater offense."  She goes on to argue, "the jurors may have felt that [petitioner] acted in imperfect self-defense *without* intent to kill . . . .  If the jury did not believe [petitioner] intended to kill, it would then have no choice but to turn to the instructions on second degree murder, which did not require an intent to kill. . . .

/////

[The court rejects] this speculation. *Watson* "requires a *reasonable* probability, not a mere *theoretical* possibility, that the instructional error affected the outcome of the trial." (*Blakeley, supra*, 23 Cal.4th at p. 94, emphasis in original.) [Petitioner's] argument ignores the entirety of the instructions given to the jury. To accept it [the court] would have to presume the jury similarly ignored the instructions.  This we will not do.

Under the instructions given, if the jury found [petitioner] acted in unreasonable self-defense, it would have concluded it was compelled to acquit her of murder, because of the absence of malice.  If the jury went on to find [petitioner] did not act with the intent to kill, it would have concluded it was required to acquit her of voluntary manslaughter.  (See *Lasko, supra,* 23 Cal.4th at p. 112; *Blakeley, supra,* 23 Cal.4th at pp. 93-94.)  Thus, under any scenario in which the jury believed [petitioner] killed Tianna unintentionally, the most the jury would have convicted [petitioner] of was involuntary manslaughter, on which the jury was also instructed.

"Instead, the jury convicted [petitioner] of second degree murder, showing that [irrespective of whether it found intent] it did not believe the killing was committed [in unreasonable self-defense]." (*Lasko, supra,* 23 Cal.4th at p. 112; see also *Blakeley, supra*, 23 Cal.4th at p.94.)  Under these circumstances, it is not reasonably probable the instructional error affected the outcome of the trial. (*Watson, supra,* 46 Cal.2d at p. 836.)

(People v. Pete, slip op. at 5-6.)

California defines voluntary manslaughter as "the unlawful killing of a human being without malice," either "upon a sudden quarrel or heat of passion."  Cal. Pen.Code 192(a). The state supreme court has held that a trial court errs when it instructs a jury it must find intent to kill in order to convict of voluntary manslaughter.  See People v. Lasko, 23 Cal.4th 101 (Cal.2000).[4]  After Lasko, CALJIC was amended and the current version of CALJIC 8.40

---

[4]  The California Supreme Court issued three decisions in June of 2000, analyzing the elements of voluntary manslaughter and distinguishing it from other murder offenses.
In Lasko, defendant Lasko killed his victim by beating him with a baseball bat.  His defense was that he had gotten into an argument with the victim and the victim struck him with the baseball bat first.  There was evidence that Lasko had previously threatened to kill the victim. Lasko was charged with first degree murder and a robbery special circumstance.  The jury was instructed on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter.  The defendant was convicted of second degree murder.  After finding that the trial court erred in instructing the jury that voluntary manslaughter required an intent to kill, the Supreme Court found the error was not prejudicial.  (Id.)

1  provides that the mental state for voluntary manslaughter is "either with an intent to kill, or with

2  conscious disregard for human life."  (Id.)

3        In general, a challenge to jury instructions does not state a federal constitutional

4  claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

5  U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to

6  warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable,

7  erroneous, or even "universally condemned,"' but must violate some due process right

8  guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir.

9  1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim

10  petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the

11  resulting conviction violates due process.'"  Middleton v. McNeil, 541 U.S. 433, 437 (2004)

12  (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  In making its determination, this court

13  must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as

14  a component of the entire trial process.'"  Prantil, 843 F. 2d at 317 (quoting Bashor v. Risley, 730

15  F.2d 1228, 1239 (9th Cir. 1984)).  See also Middleton, 541 U.S. at 437.  Where the challenge is

16  to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

17  "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

18

19    The People v. Blakeley, 23 Cal.4th 82, 87-91, 96 Cal.Rptr.2d 451 (2000), decision focused on

20  the type of voluntary manslaughter when the defendant killed in "unreasonable self defense" (as
    opposed to the heat of passion type) and repeated that intent to kill was not an element of

21  voluntary manslaughter.  The California Supreme Court held that "voluntary manslaughter is also
    committed when a defendant, acting with conscious disregard for life and the knowledge that the

22  conduct is life-endangering, unintentionally but unlawfully kills while having an unreasonable
    but good faith belief in the need to act in self defense."  Id. at 85, 96 Cal.Rptr.2d 451.

23    In People v. Rios, 23 Cal.4th 450, 460-70, 97 Cal.Rptr.2d 512 (2000), the California Supreme
    Court held that the prosecution did not have the burden of proving the absence of heat of passion

24  (or imperfect self defense) for a voluntary manslaughter conviction. The Court held that neither
    provocation nor an unreasonable belief in the need for self defense were an additional element of

25  that crime.  By contrast, evidence of imperfect self-defense (or provocation) is relevant to the
    element of malice, which is a requirement for a murder conviction, but which "mitigate [s] the

26  offense by negating the murder element of malice, and thus limit[ing] the crime to
    manslaughter."  Id. at 454, 97 Cal.Rptr.2d 512.

1   of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).  <u>See also</u> <u>Villafuerte v. Stewart</u>, 111

2   F.3d 616, 624 (9th Cir. 1997).

3      Moreover, the United States Supreme Court has held that the failure to instruct on

4   a lesser included offense in a capital case is constitutional error if there was evidence to support

5   the instruction.  <u>See</u> <u>Beck v. Alabama</u>, 447 U.S. 625, 638 (1980).  The Supreme Court has not

6   decided whether this rationale also extends to non-capital cases.  <u>See</u> <u>Turner v. Marshall</u>, 63 F.3d

7   807, 818 (9th Cir. 1995), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Tolbert v. Page</u>, 182 F.3d 677 (9th Cir.

8   1999).  The Ninth Circuit, like several other circuits, has declined to extend <u>Beck</u> to find

9   constitutional error arising from the failure to instruct on a lesser included offense in a

10  non-capital case.  <u>See</u> <u>Windham v. Merkle</u>, 163 F.3d 1092, 1106 (9th Cir. 1998); <u>Turner</u>, 63 F.3d

11  at 819 (<u>citing</u> <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9ty Cir. 1984)).  <u>See also</u> <u>Valles v.</u>

12  <u>Lynaugh</u>, 835 F.2d 126, 127 (5th Cir. 1988); <u>Trujillo v. Sullivan</u>, 815 F.2d 597, 602 (10th Cir.

13  1987); <u>Perry v. Smith</u>, 810 F.2d 1078, 1080 (11th Cir. 1987).

14     The court's refusal to give an instruction on the lesser included offense of

15  involuntary manslaughter did not rise to the level of a constitutional error for which federal

16  habeas relief is available because petitioner's trial was not a capital case.  To find a constitutional

17  right to a lesser-included offense instruction in this non-capital case would require the

18  application of a new rule of law, which the court may not do in a habeas proceeding under

19  <u>Teague v. Lane</u>, 489 U.S. 28 (1989).  <u>See</u> <u>Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000)

20  (habeas relief for failure to instruct on lesser included offense in non-capital case barred by

21  <u>Teague</u> because it would require the application of a new constitutional rule); <u>Turner</u>, 63 F.3d at

22  819 (same).  Under these circumstances, the decision of the California courts denying petitioner

23  relief as to this claim was not contrary to federal law as set forth in the decision in <u>Beck</u>.

24     Even if the <u>Beck</u> rule could be expanded to include a duty to instruct on lesser

25  included offenses in non-capital cases, petitioner has not shown that the refusal to give the

26  suggested jury instruction amounted to constitutional error in this case or rendered his trial

1  fundamentally unfair.  The defendant's right to adequate jury instructions on his or her theory of

2  the case might, in some cases, constitute an exception to the general rule in Beck.  Bashor v.

3  Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).

4        It follows from the reasoning of the appellate court that petitioner was deprived of

5  having jurors instructed that they could find petitioner guilty of the lesser included offense of

6  voluntary manslaughter occurring without intent to kill.  This court must determine if petitioner's

7  due process rights were violated by the trial court's failure to give this instruction.  Because the

8  Court of Appeal did not address the due process aspect of petitioner's claim, this court assumes

9  the California Supreme Court's rejection of petitioner's claim was based on an application of the

10  correct law, and analyzes whether the decision of that court reflects an objectively unreasonable

11  application of that law.

12        Here, however, petitioner's right to present a defense was not compromised by the

13  court's failing to instruct jurors correctly with respect to voluntary manslaughter because she

14  presented evidence supporting her defense theory of "imperfect self-defense."  The jury was

15  properly instructed as to this theory:  "There is no malice aforethought if the killing occurred in

16  the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life

17  or great bodily injury."  (RT 1096.)  Had the jury agreed with the imperfect self defense theory,

18  the element of malice would have been negated, and the jury would have acquitted petitioner of

19  second degree murder as well as voluntary manslaughter.

20        The jury was provided a lesser alternative had they found petitioner acted in

21  imperfect self defense.  The jury was properly instructed on involuntary manslaughter.  (RT

22  1097.)  Thus, the jury could have found petitioner guilty of involuntary manslaughter if the jury

23  believed petitioner acted in imperfect self defense.

24        Reviewing the record and the jury instructions as a whole, the court concludes that

25  the trial court's incorrect instruction on the lesser included offense did not render her trial

26  fundamentally unfair.  Petitioner's jury was adequately instructed on the mental state required for

9

1   a finding that petitioner harbored implied malice when she repeatedly struck the victim.  As the

2   state court noted, the jury was adequately and appropriately instructed on the difference between

3   murder and manslaughter, on imperfect self defense, the definition of malice, and the fact that

4   petitioner could not be found guilty of murder unless the jury found petitioner acted with malice

5   aforethought.

6          Even if petitioner were able to show that there is a reasonable likelihood that the

7   jury applied the challenged instruction in a way that violates the Constitution, her claim would

8   still fail because petitioner would not be able to establish prejudice.  See Brecht v. Abrahamson,

9   507 U.S. 619, 636-38, 113 S.Ct. 1710 (1993).  Under Brecht, petitioner must show that any error

10  had a substantial and injurious effect or influence in determining the jury's verdict.  Id.  See also

11  Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir.2000) (finding Brecht prejudice where "at

12  the very least" the court could not " 'say with fair assurance . . . that the judgment was not

13  substantially swayed by the [instructional] error.' ").  Given the ample evidence that petitioner

14  acted with malice aforethought presented at trial, this court cannot find that the judgment was

15  "substantially swayed" by instructional error.  See Coleman, 210 F.3d 1051.  Here, the second

16  degree guilty verdict in this case means the jury necessarily found that the prosecution had

17  proven beyond a reasonable doubt that petitioner acted with malice (i.e., the killing resulted from

18  an intentional act, the natural consequences of the act are dangerous to human life, and the act

19  was deliberately performed with knowledge of the danger to, and with conscious disregard for,

20  human life) and had not acted in imperfect self defense.  See Masoner v. Thurman, 996 F.2d

21  1003, 1005; 1008-09 (9th Cir.1993)(when a California jury returned second degree murder

22  verdict, "the jury necessarily found beyond a reasonable doubt that [defendant] acted with

23  malice").  Therefore, error in the voluntary manslaughter jury instruction did not have a

24  substantial and injurious effect on the verdict.  This claim should also be denied.

25  /////

26  /////

1       B. CALJIC 17.41.1

2           Petitioner claims that the trial court violated her constitutional right to due process

3  and a fair trial by instructing the jury with CALJIC 17.41.1.[5]  This claim was raised by petitioner

4  on direct appeal.  (See Exs. E and F to Answer to Petition for Writ of Habeas Corpus, filed

5  August 11, 2003.)  The last reasoned state court rejection of the claim is the decision of the

6  California Court of Appeal for the Third Appellate District.  (See Ex. D to Answer.)

7           The state Court of Appeal rejected this claim, finding that even if the instruction

8  was improper, any error was harmless because the record did not reflect juror misconduct nor

9  suggest that any juror was refusing to follow the law.  (Id., at 7-10.)  The state court relied on

10  People v. Molina, 82 Cal.App.4th 1329, 1332-35 (2000).

11           Petitioner's claim for relief is foreclosed by the decision in Brewer v. Hall, 378

12  F.3d 952, 955-57 (9th Cir.), cert. denied, 543 U.S. 1037 (2004).  In Brewer, the Ninth Circuit

13  held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, habeas corpus relief

14  was unavailable on the identical claim presented by petitioner here because there is "no Supreme

15  Court precedent clearly establishing" that use of this jury instruction violates a defendant's

16  constitutional rights.  Id. at 955-56.  Here, as in Brewer, petitioner "has pointed to no Supreme

17  Court precedent clearly establishing that CALJIC 17.41.1--either on its face or as applied to the

18  facts of his case--violated his constitutional rights."  Id. at 957.  Thus, the state court's rejection

19  of petitioner's jury instruction claim was not contrary to or an unreasonable application of clearly

20  established federal law.  28 U.S.C. § 2254(d).[6]

21  ———————————————

22       [5] The jury was instructed as follows: "The integrity of the trial requires jurors at all times
    during their deliberations conduct themselves as required by these instructions.  Accordingly,
23  should it occur that any juror refuses to deliberate or expresses an intention to disregard the law
    or to decide the case based on penalty or punishment or any other improper basis, it is the
24  obligation of the other jurors to immediately advise the Court of this situation."  (Clerk's
    Transcript ("CT") at 1111.

25       [6] In People v. Engelman, 28 Cal. 4th 436, 439-40 (2002), the California Supreme Court
26  held that CALJIC No. 17.41.1 "does not infringe upon defendant's federal or state constitutional
    right to trial by jury or his state constitutional right to a unanimous verdict."  However, using its

1    Even if the state trial court erred in instructing the jury with CALJIC No. 17.41.1,

2  any such error was harmless under the circumstances of this case.  See Brecht v. Abrahamson,

3  507 U.S. 619, 623 (1993) (holding that a federal court may not grant habeas relief for trial errors

4  without a showing of actual prejudice, defined as a "substantial and injurious effect or influence

5  in determining the jury's verdict").  There is no evidence that any of the jurors at petitioner's trial

6  wished to engage in jury nullification or that any juror was a "holdout" for acquittal.  There is

7  simply no indication that the giving of CALJIC No. 17.41.1 in this case chilled the jurors'

8  exercise of free speech or prevented free and full deliberations on the part of the jury.

9  Accordingly, petitioner is not entitled to relief on this claim.

10    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

11  writ of habeas corpus be denied.

12    These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED:  February 6, 2008.

21

22

23    UNITED STATES MAGISTRATE JUDGE

24  /001; pete2713.157

25  _____

26  supervisory authority over the lower state courts, the California Supreme Court discontinued the
use of CALJIC No. 17.41.1 because of its "potential" to intrude on jury deliberations.  Id. at 440.